IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHELE D. TRUSLER

        Plaintiff,

        v.                                                  Civil Action No. 2:07-CV-71

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.     Background

Plaintiff, Michele Trusler, (Claimant), filed her Complaint on September 13, 2007, seeking Judicial review pursuant to 42 U.S.C. §§ 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed his Answer on December 10, 2007.[2] Claimant filed her Motion for Summary Judgment on January 9, 2008.[3] Commissioner filed his Motion for Summary Judgment on February 5, 2008.[4]

B.     The Pleadings

    1.     Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment.

    2.     Defendant's Brief in Support of His Motion for Summary Judgment.

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket No. 9.

[4] Docket No. 10.

C.  Recommendation

I recommend that:

1. Claimant's Motion for Summary Judgment be **DENIED** because the ALJ's determination of Claimant's RFC and the hypothetical posed to the Vocational Expert properly accounted for Dr. Marinelli's opinions contained in the PRTF and MRFC Assessment.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

## II.  Facts

A.  Procedural History

Claimant filed an application for Disability Insurance Benefits and Supplemental Security Income on August 6, 2004, alleging disability since February 2, 2003 due to affective disorders and anxiety. Claimant's application was denied initially on February 9, 2005, and upon reconsideration on August 30, 2005. Claimant requested a hearing before an ALJ and received a hearing on August 29, 2006. On October 30, 2006, the ALJ issued a decision adverse to Claimant. Claimant requested review by the Appeals Council but was denied. Claimant filed this action, which proceeded as set forth above.

B.  Personal History

Claimant was 33-years-old on the date of the August 29, 2006 hearing before the ALJ. Claimant completed tenth grade, later obtained a GED, and also earned a certificate as a certified nursing assistant. Claimant has prior work experience as a home health aide, a CNA, and a cashier.

C. <u>Medical History</u>

The following medical evidence is the only medical evidence relevant to the single issue raised by Claimant in her Motion for Summary Judgment:

**Dr. Marinelli, Psychiatric Review Technique Form, 8/5/05 (Tr. 268)**
Medical Dispositions: RFC Assessment Necessary
Category(ies) upon which the medical disposition is based: 12.04 Affective Disorders; 12.06
    Anxiety-related disorders; 12.09 Substance Addiction Disorders.
Affective Disorders: Disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by at least one of the following: Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).
Anxiety-Related Disorders:
    Anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms, as evidence by at least one of the following: Generalized persistent anxiety accompanied by three of the following - motor tension, autonomic hyperactivity, apprehensive expectation.
    A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: Panic Disorder.
Substance Addiction Disorders: A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above: Marijuana abuse.
Functional Limitation for Listings 12.04, 12.06, 12.09
    Restriction of Activities of Daily Living: Mild
    Difficulties in Maintaining Social Functioning: Moderate
    Difficulties in Maintaining Concentration, Persistence or Pace: Moderate
    Episodes of Decompensation, each of extended duration: One or Two
"C" Criteria of the Listings: Evidence does not establish the presence of the "C" Criteria

**Dr. Marinelli, Mental RFC Assessment, 8/5/05 (Tr. 282)**
<u>Understanding and Memory</u>:
Ability to remember locations and work-like procedure: moderately limited
Ability to understand and remember very short and simple instructions: not significantly limited
Ability to understand and remember detailed instructions: moderately limited
<u>Sustained concentration and persistence</u>
Ability to carry out very short and simple instructions: not significantly limited
Ability to carry out detailed instructions: moderately limited.
Ability to maintain attention and concentration for extended periods: not significantly limited
Ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances: moderately limited
Ability to sustain an ordinary routine without special supervision: not significantly limited
Ability to work in coordination with or proximity to others without being distracted by them:
    no evidence of limitation in this category

3

Ability to make simple work-related decisions: not significantly limited
Ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistence pace without an unreasonable number and length of rest periods: moderately limited.

Social Interaction

Ability to interact appropriately with the general public: no evidence of limitation in this category
Ability to ask simple questions or request assistance: not significantly limited
Ability to accept instructions and respond appropriately to criticism from supervisors: moderately limited
Ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes: moderately limited
Ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness: not significantly limited

Adaptation

Ability to respond appropriately to changes in the work setting: no evidence of limitation in this category
Ability to be aware of normal hazards and to take appropriate precautions: not significantly limited
Ability to travel in unfamiliar places or use public transportation: no evidence of limitation in this category
Ability to set realistic goals or make plans independently of others: moderately limited

Functional Capacity Assessment: Claimant's MRFC is reduced by moderate limitations in memory, sustained persistence, social functioning, and judgment. She has the capacity for routine, competitive employment involving short and simple instructions with low interpersonal and pressure demands.

D.   Testimonial Evidence

Testimony was taken at the August 29, 2006 hearing. The following portions of the testimony are relevant to the disposition of the case.

[EXAMINATION OF VOCATIONAL EXPERT BY ALJ] (Tr. 438)

Q   All right. Any - - it appears that the claimant's profile in this case is a young lady between the ages of 29 to 33, she has a 10th grade education but she was able to acquire a GED and also certification as a CNA and she has the past relevant work that you've identified. Assume the  - - no physical exertional limitation but I want you to consider that such an individual is limited to simple, routine type work activity with occasional social contact with

4

supervisors, coworkers and the general public. And consider than such an individual would need no fast paced production type quota work activity. Now in the event - - well, that, you know, that would be, that would be my hypothetical and my question to you would be could she do any of her past work?

  A  No, Your Honor.

  Q  Okay. Could you cite some specific facts, for example, as to why she could not do her, even the light, unskilled work that you've identified?

  A  She would have more than occasional with the general public.

  Q  All right. Then could you define or describe any jobs that such an individual could perform in the national or regional economy? The regional to be defined by you and at what exertional levels.

  A  Yes, Your Honor, and I'll define the local economy as 20 percent of all jobs in the state of West Virginia based on Bureau of Labor Statistics. At the medium level there would be the work of a kitchen helper, in the local economy there are 231 jobs, in the national economy, 203,963 jobs. At the medium level there would be the work of a commercial cleaner, in the local economy there are 7,349 jobs, in the national economy, 1,062,720 jobs. There would be the work of an equipment cleaner, in the local economy there are 230 jobs, in the national economy, 201,124 jobs. At the light level there would be the work of an office helper, in the local economy there are 127 jobs, in the national economy, 162,282. There would be the work of a sewing machine operator, again this is at the light level, there are 70 jobs in the local economy, 118,906 jobs in the national economy. There would be the work of a packer at the light level, in the local economy there are 131 jobs, in the national economy, 215,414 jobs.

*   *   *

[EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY] (Tr. 440)

Q Are all the jobs that you've named in response to the first hypothetical unskilled in nature?

A Yes.

Q In that, in unskilled work how much time off task is permissible before a person becomes unemployable?

A There are time studies done by the government that would indicate that an individual even in unskilled work could be off task perhaps up to 10 percent of a workday and still maintain the required levels of productivity.

Q And what are the attendance requirements in unskilled work

A It's my experience in all work essentially that if an individual - - employer's will tolerate an individual being absent from work two days per month. And if an individual begins missing more than that in a chronic basis, just generally it will result in a person losing a job.

*   *   *

E. <u>Lifestyle Evidence</u>

No evidence of Claimant's lifestyle is relevant to the single issue raised by Claimant in her Motion for Summary Judgment.

### III. The Motions for Summary Judgment

A. <u>Contentions of the Parties</u>

Claimant argues the ALJ erred by failing to include in her RFC and the hypothetical to the VE all the limitations identified by Dr. Marinelli in his PRTF and MRFC Assessment.

Commissioner contends Claimant's argument is without merit.

B. <u>The Standards</u>.

1. <u>Summary Judgment</u>. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. <u>See</u>, 42 U.S.C. §405(g), (h); <u>Adams v. Heckler</u>, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable

clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

   5.   Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(I), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

   6.   Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Secretary. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

   7.   Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

   8.   Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat

less than a preponderance.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. <u>Social Security - Sequential Analysis</u>.  To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy.  Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job.  Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C.  <u>Discussion</u>

1.  <u>Whether Claimant's RFC and the Hypothetical to the VE Properly Accounted for Dr. Marinelli's Opinions Contained in the PRTF and MRFC Assessment</u>.

Claimant argues the ALJ erred by failing to include in her RFC and the hypothetical to the VE all the limitations identified by Dr. Marinelli in his PRTF and MRFC Assessment.  Commissioner argues Claimant's argument is without merit because the ALJ's consideration of Dr. Marinelli's reports complied with Fourth Circuit precedent and SSR 96-8p, and was supported by substantial evidence.  Commissioner further contends the ALJ's hypothetical to the vocational expert was proper because the ALJ properly included in the hypothetical only those limitations supported by the record.

Dr. Marinelli, a state agency psychological consultant, reviewed Claimant's file on August 5, 2005 and completed a Psychiatric Review Technique Form, (PRTF), and a Mental

9

Residual Functional Capacity Assessment, (MRFC Assessment). In the PRTF, Dr. Marinelli concluded Claimant suffered from an affective disorder, anxiety-related disorder, and a substance addiction disorder in the form of marijuana addiction. (Tr. 268). He also concluded Claimant's mental impairments imposed a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. Id. Finally, he concluded Claimant's affective disorder and anxiety-related disorder did not meet the "C" Criteria of Listing 12.04, and 12.06, respectively. Id.

In the MRFC Assessment, Dr. Marinelli concluded Claimant had no significant, or only moderate, limitations in her ability to understand and remember; no significant, or only moderate, limitations in her ability to sustain concentration and persistence - except one area where he found no evidence of limitation, namely the ability to work in coordination with or proximity to others without being distracted by them; no significant, or only moderate, limitations in her social interaction ability - except one area where he found no evidence of limitation, namely the ability to interact appropriately with the general public; and no significant, or only moderate, limitations in her ability to adapt - except two areas where he found no evidence of limitation, namely the ability to respond appropriately to changes in the work setting, and the ability to travel in unfamiliar places or use public transportation. (Tr. 282). Based on the foregoing, Dr. Marinelli concluded "Claimant's MRFC is reduced by moderate limitations in memory, sustained persistence, social functioning, and judgment. She has the capacity for routine, competitive employment involving short and simple instructions with low interpersonal and pressure demands." (Tr. 284).

The ALJ considered the above reports and assigned them "great weight" because the reports were

> "consistent with and supported by the medical evidence of record including psychologist Allman's evaluation, and the Valley Healthcare psychiatric treatment records showing good clinical stability and improvement when compliant with her medications with GAF assessments ranging from 55-65, and the assessment is given by a mental health specialist who has an understanding of the disability programs and their evidentiary requirements."

(Tr. 21, 22). The ALJ ultimately concluded Claimant retained the following residual functional capacity: "she has no exertional limitations; she is limited to simple, routine work activities with occasional contact with supervisors, co-workers, and the general public, and work in a low pressure setting with no fast paced production/quota work activity." (Tr. 22).

At the hearing, the ALJ asked the VE to consider a hypothetical individual who has "no physical exertional but I want you to consider that such an individual is limited to simple, routine type work activity with occasional social contact with supervisors, coworkers and the general public. And consider than such an individual would need no fast paced production type quota work activity." (Tr. 438).

As stated above, Claimant alleges the ALJ erred because he assigned "great weight" to Dr. Marinelli's PRTF and MRFC Assessment and yet failed to include in the RFC and hypothetical all the limitations identified by Dr. Marinelli in his reports. Claimant's allegation is without merit for the following reasons. Regarding the ALJ's treatment of Dr. Marinelli's MRFC Assessment, the ALJ's adoption of Dr. Marinelli's MRFC did not obligate the ALJ to mention in Claimant's RFC or the hypothetical every limitation relied on by Dr. Marinelli in arriving at Claimant's MRFC. Rather, as stated in Section III of the MRFC Assessment, the MRFC represents the doctor's "narrative" of the limitations identified in Section I. (Tr. 284).

11

Therefore, the ALJ reasonably relied on the MRFC cited by Dr. Marinelli as representing the limitations identified by Dr. Marinelli in Section I, and was not obligated to mention every limitation.

Even had the ALJ been obligated to account for every limitation identified by Dr. Marinelli in Section I of the MRFC Assessment, Claimant has failed to establish how the ALJ failed in this respect. Like Dr. Marinelli, the ALJ limited Claimant in the areas of memory and concentration, social interaction, and pressure and demands of the work environment. (Tr. 22). A limitation-by-limitation comparison of Dr. Marinelli's MRFC and the ALJ's RFC reveals both Dr. Marinelli and the ALJ limited Claimant to routine work, to short, simple activities, to work involving low interpersonal demands, and to working in a low pressure environment. (Tr. 22, 284). Claimant's argument the ALJ did not properly consider the limitations in Dr. Marinelli's MRFC Assessment therefore fails.

Claimant's argument concerning the ALJ's treatment of Dr. Marinelli's PRTF also fails. At the outset, the Court notes it is unclear what limitations identified in the PRTF Claimant alleges the ALJ failed to incorporate, because the ALJ's RFC and hypothetical adopted the PRTF's limitation on Claimant's ability to maintain social functioning, concentration, persistence, or pace. (Tr. 21-22, 278). Assuming Claimant's allegation concerns the RFC's and hypothetical's failure to explicitly mention the PRTF's "one to two episodes of decompensation," the failure does not constitute error. As explained in SSR 96-8p, the limitations contained in a PRTF "are not an RFC assessment," but rather indicators of the severity of an impairment used to determine whether an impairment meets or equals a Listing. SSR 96-8p. An ALJ must undertake a "more detailed assessment" of the limitations in a PRTF

12

to arrive at a Claimant's RFC. Therefore, the fact the PRTF mentioned Claimant's episodes of decompensation did not obligate the ALJ to include in Claimant's RFC or the hypothetical a limitation explicitly accommodating Claimant's episodes of decompensation. Moreover, the ALJ's failure to explicitly accommodate Claimant's episodes of decompensation was supported by Dr. Marinelli's opinion that Claimant, despite her episodes of decompensation, retains the MRFC to engage in competitive employment. (Tr. 22).

For the above reasons, Claimant's argument does not warrant relief.

## IV. Recommendation

For the foregoing reasons, I recommend that:

1. Claimant's Motion for Summary Judgment be **DENIED** because the ALJ's determination of Claimant's RFC and the hypothetical posed to the Vocational Expert properly accounted for Dr. Marinelli's opinions contained in the PRTF and MRFC Assessment.

2. Commissioner's Motion for Summary Judgment be **GRANTED** for the same reasons set forth above.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

DATED: July 22, 2008

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE